Good morning, your honors. My name is Alex Park. I'm the attorney of record for the appellant Shin. I'd like to first thank you for letting us go first. The time will be allocated, as I'll be addressing the court briefly for about a minute. The bulk of the time will be allocated to the amicus attorney who is on the case, William Rapolo. He will present the argument on behalf of the court. Currently, Ms. Shin has an approved I-140 with the USCIS. Now, I've heard a lot about I-130s. What's an I-140? It is an immigrant petition for alien worker, your honor. All right. She's ready to adjust, but for the fact that the third preference, the employment-based preference, has been backlogged over to year 2002. She has a priority date of 2006. That means waiting for four years, your honors. What is her specialty which justifies the I-140? She's being hired as a skilled worker as a cook. All right. Also, your honors, on November 7th, 2007, pardon me, November 16th, 2007, we just filed a class action at the district court for the Northern District of California requesting that this case be heard for the first time on the arguments, the same arguments that are being presented here, namely estoppel, unclean hands, and latches. We filed a class action, and now the case is lodged with Magistrate Chen for a first CMC sometime in February of next year. Let me get this straight. You're seeking to have the United States government restrained from removing Shin pursuant to the immigration laws of the country? That's correct, your honor. But isn't jurisdiction of immigration vested in the attorney general? That's correct, your honor. Let me make sure I understand the record here. Didn't Shin concede removability before the immigration judge? May I address that after? Yes, she did. But that is because in this particular case, factually, and all of the Sustair cases, because of what Sustair has done, there has never been an application for a petition. Everything went from application over to adjustment. In all honesty, we cannot argue that we did not have the valid petition, because the Sustair, the INS agent, and the brokers bypassed that critical step. We don't have a WEC tracer or EAC tracer, what is known as an application tracer that goes back to the petition. Well, Mr. Sustair is the bad guy in this whole thing. Nonetheless, your client did concede removability. Isn't that correct? Based on that particular fact, if in fact that step was the only step that was bypassed, we did concede on a very limited standing that we thought we were filing for an application. And we didn't know that that application process had been bypassed. And it was a qualified concession that if indeed that was bypassed, there was no way that we were going to now retroactively erect and argue in good conscience that that step was not bypassed, because it was bypassed by Sustair. I understand your argument. Do you want to give time to your partner? Good morning, Your Honors. May it please the Court, William Rapolo with the law firm Baker McKenzie. This case is before you today because 14 years ago, the U.S. government granted a green card to Ms. Shin. Will you speak up so that everyone can hear, please? 14 years ago, the government granted a green card to Ms. Shin. Nine years later, they realize they made a mistake and they have sent her deportation papers and want to now throw her out of the country because the government realized they made a mistake now 14 years ago. I am here to ask you to stop them from doing that. Ms. Shin was issued a valid green card by Leland Sustair, who was the head of the San Jose office, who had the full authority to issue green cards, and that's exactly what he did. But it was an unauthorized act, and how can we bind the government by the unauthorized act of its agents? We have case law in the Ninth Circuit, including Watkins and so forth, that went en banc that says the government is not bound by the unauthorized acts of its agents. Well, there's two points to that. First off, this was an authorized act. He had the authority. The government gave him the authority to do exactly what he did, which is issue green cards, and that's what he did. The government official did something that he clearly had no authority to do. Agent Sustair was able to do this. They put him in this position where he was the only person in that office who had unfettered discretion to offer green cards, and that's what he did. This green card was sent from the Dallas office. I mean, everything in this green card was official except the ways he went about it. The way he went about it, selling them on the street. I mean, you can't say he had authority to do that. Well, he didn't have authority to do that, but as the position that he was in, the government put him in that position where he's not just a line inspector or a line officer. If your court looks at the Salgado Diaz case of just a few years ago, that was actions of low-level border patrol officers. This man was head of the office. What's your best case for the proposition that a government agent selling unauthorized government permits can bind the government? Your Honor, I look at a few different cases. I think one of the biggest cases that I like is the Johnson v. Williford case. In that case, if you look at the two different facts in that case, in that case, the government was a stop from bringing Mr. Johnson back into prison because he was a narcotics trafficker who was sent to jail for 15 years. In that case, he was let out after three years by a mistake, a clear violation. These officers clearly made mistakes in letting him go. He was in the community for a year and a half. Then the government went and re-arrested him because they realized their mistake. After a year and a half, the court looked at him and said, no, you can't do that. You're a stop from doing that because Mr. Johnson has been in the community, he's an asset to the community, he's been readjusted. All right, let me ask you this, though. Your client's hands were not particularly clean. Though she was in reality divorced from a man who had never been in the United States and held only a high school degree, she accepted a green card as the wife of a skilled worker or professional in the United States holding a college degree. In accepting that, she relied on the representations of the government and its agents. She knew those facts were not correct. She talked to Mr. Lee, and if this is a comical... It doesn't pass the straight face test, counsel. But I understand that. What she did, she relied on representations of someone who said, I work with great attorneys, I can get you this green card. And that changes her relationship with her husband? That's a really great attorney. It doesn't change her relationship with her husband. But she at no time acted in bad faith. She was approached by someone who she thought was a lawyer, went ahead and told her that he could go ahead and get her these because they have fantastic abilities. Really what they were doing was paying off this immigration official who went ahead and authorized this and gave her this valid green card, which she's had for 14 years. She is in this community. She's a taxpaying member of the community. She has never been in any trouble, hasn't been convicted of any crimes. I mean, this is a woman for 14 years now who has been a productive member of the community. You should address those arguments to the executive and perhaps to Congress to get her a private act making her a citizen, but not to this court. I believe this court has the authority, and it has in the past, to stop the government from doing such affirmative misconduct as Mr. Sestero did. Mr. Sestero, it should be pointed out, had never served a day in jail, was in order to pay any restitution from his victims. This is a man who has profited from his illegal activity. And here someone like Ms. Shin, who paid what she thought was truly a legal process to get her green card, is now being told after 14 years she's got to leave the country. You've used up your time. I don't know. We're going to give a minute for rebuttal. Thank you very much. Thank you. May it please the court, Sarah Maloney for the respondent. The court should deny the petition for review. The court should deny the petition for review. Shin admitted that she's a visa overstay and she's removable as such, and she conceded without qualification that she didn't have valid documents when her status was illegally adjusted. Because she's removable as charged, there's no basis for this court to equitably stop the government from removing her. The absence of a viable challenge to removability means that Shin would only be challenging the DHS decision to commence proceedings, the IJ's or the board's decision to adjudicate the case, or the DHS decision to execute the removal order. Under INA 242G, judicial review is precluded over those matters. Since Shin is seeking estoppel, in spite of her conceded removability, the court lacks jurisdiction over her claim. Estoppel is going, as I understand it, the basis of estoppel does not have to do with those three acts under 1252G, over which we have no jurisdiction. Estoppel is to stop the court from denying that she has a valid green card. None of those three, commencement of action, deportation, or execution, come within that theory. So I think you've got better grounds, I must argue. Well, assuming jurisdiction, the government shouldn't be estopped from removing Shin due to the lack of evidence that she knowingly participated in fraud committed on her behalf. Your voice still is not projected. Assuming jurisdiction, the government should not be estopped from removing Shin due to the lack of evidence that she knowingly participated in fraud committed on her behalf. The fraud crime was against the government. In other words, she's guilty of dirty hands. Well, there's little evidence of that, although certainly she should have known that she was ineligible to adjust her status and that it wasn't unlawfully. If she was divorced at the time from her former husband and her green card had her as being the spouse of a skilled worker or professional holding a baccalaureate degree, isn't that a sort of a basic fact which she is misrepresenting by holding the green card? Yes, it's true. It's true that she was ineligible. And there's no affirmative misconduct against her by DHS or EOR because it was Sustair in his criminal activities, his unauthorized activities, that he issued her the green card. It wasn't the government. It wasn't a valid green card. She can't show the remaining elements of an estoppel claim either because the crime, because Sustair acted outside of his official capacity. She can't show affirmative misconduct, that there was any agency knowledge of the fraud, and that the agency or even Sustair had any intent that Shin would rely on his misconduct to her detriment. Let me ask you another question. Why shouldn't we grant petitioner's motion to reopen if she has a viable visa petition pending? She has an approved I-140 visa petition for a skilled worker. Congress has put numerical limits on the number of visa petitions that can be immediately available for petitioners in the United States or aliens in the United States to adjust their status. And so the Department of State issues the visa bulletin, and currently they're accepting applications from aliens who have a current priority date of September 2002. The petitioner, Shin in this case, her priority date is in 2006. So it may take years, if ever, for her priority date to become current and for her to be eligible to adjust. She didn't present any documentation, is that correct? With her motion to reopen? Yes. The board didn't abuse its discretion in denying her motion to reopen. Not only is she ineligible to adjust her status, she didn't attach to the motion the materials required by the regulations. And this is her second motion to reopen, and you only are allowed one. I believe it was her first motion to reopen. I thought it was her second motion. But she's ineligible for relief. She never was eligible to adjust her status. And she's known since at least March of 2000, if not earlier, that her documents were unlawful. And she's done nothing to mitigate the damage, or I guess her reliance on it is unreasonable beyond that especially. If she were removed, her application for an I-140 would continue, and she could come back when that was granted, correct? Yes. And the country of removal would be Korea? Yes. Would she not be barred by the 10-year statute? Does that apply or does it not apply? Yes, it would apply in this case because she didn't ask for an agreed to voluntary departure, so she would be barred. However, there's no indication that DHS or CIS wouldn't grant her the waiver. You would not object to a voluntary departure request, would you? She can't do that now. She had to have done it during administrative proceedings before EOIR. But can you prospectively grant a waiver so that when her I-40 comes up, she can come back here? No, I don't think the agency is willing to do that. I know that the agency is intimately involved in these suster cases. They have attorneys working on it, the client agency. And there's no indication that they would deny a waiver in these cases. So isn't it sort of a fantasy to say that she can come back four years from now when her number comes up under I-40 because she'll be barred under the 10-year rule? Unless she's granted a waiver. But we don't even know that her number will become current. How does she get a waiver granted, counsel? She would apply to the Citizenship and Immigration Services. And it's within their prosecutorial discretion whether or not to grant it. But you're not willing to represent that the waiver will be granted now. Well, how is her case going to be any better four years from now? Well, we don't know what would occur between now and then. She might be inadmissible for other reasons as well. She's removable. All right. Thank you very much. Okay, thanks. Are we giving them one minute? Right, one minute. I'll be quick, Your Honors. First of all, she did not, my client did not constitute a fraud charge. Second of all, she did not constitute a fraud charge. There was no fraud charge ever made on this case. Second point is when she was issued a green card, the scheme was such that she wasn't informed about her being the wife of a skilled worker. What Sesteri did was he pulled his numbers from the first and second preference, first preference being an excellent researcher or an intra-company transfer, somebody who was getting $150,000 a year, or from the second preference, which is master's or bachelor's plus five years of experience. Those two quotas are unused. So Sesteri knew that those quotas were not being used. What he would do is he would pull them from the U.S. State Department's quota availability and route it such that the green card would go to Texas Service Center and then come back. Now, Ms. Chin was never told that she is, in fact, getting a card as a green card, as a wife of a skilled worker. Third point, we did not apply for a voluntary departure because the State Department in Seoul, the embassy of the United States, has the Sesteri roster attached. I had a client who went to Korea on a visit, lost his green card, and applied for a permission to reenter. He was summarily denied because he was on the Sesteri roster. So as a practical matter, at the administrative hearing, we could not apply for a voluntary departure because of that roster being attached at the State Department. I think the whole point of argument here being put forth today is a fairness, Your Honors. I think she relied on a set of the conducts that Sesteri and the brokers had done. But she did concede removability, so how can she claim denial of due process? Based on that limited, in all consciousness, when we found out, it was revealed during the administrative hearing that Sesteri took all these records and burned them. He was having a glass of wine and he burned all the A files. He's a bad man. That doesn't save her. I understand, but in all consciousness, if Sesteri was lost with the responsibility from the agent of the machine to be able to send that file over to the Eastern Adjudication Center, Laguna Niguel, or if he was indeed delegated the duty to send them to the Eastern Adjudication Center, if he didn't do that, we couldn't in good conscience as the respondent in the administrative court say, we're going to turn blind eyes to that and insist upon a valid green card. I understand your argument. Thank you. Thank you, Your Honors. Thank you. The case of Shin v. Mukasey is submitted. Thank you, counsel, for your arguments.
judges: Nelson, Bea, Oberdorfer